**BOX PHOTO & ENGRAVING COMPANY, Appellant,**

v.

**REVENUE CABINET, Commonwealth of Kentucky, Appellee.**

**No. 86–CA–2249–MR.**

Court of Appeals of Kentucky.

Sept. 11, 1987.

Rehearing Denied Nov. 6, 1987.

Discretionary Review Denied by Supreme Court Feb. 23, 1988.

Elsa Goss Black, Jackson W. White, Stoll, Keenon & Park, Lexington, for appellant.

James D. Brannen & John C. Tobin, Legal Services Section, Revenue Cabinet, Frankfort, for appellee.

Before CLAYTON, McDONALD and MILLER, JJ.

McDONALD, Judge:

Box Photo & Engraving Company appeals from the judgment of the Franklin Circuit Court which affirmed the ruling of the Kentucky Board of Tax Appeals in this matter.

For background purposes, we relate that Box Photo, of Paducah, Kentucky, publishes a weekly paper known as *The Shopper News*. Its circulation is mostly in McCracken County. The news content of the paper ranges from 35% to 50%, the balance being devoted to advertising. Out of a circulation of 17,000, about 800 copies are subscriptions. The unsubscribed copies are distributed free of charge in the stores and businesses that advertise in the paper. *The Shopper News* employs a reporter, a photographer, an editor and several local correspondents. The cabinet admitted at oral argument that *The Shopper News* was a newspaper within the meaning of the regulations.

Box Photo holds a Kentucky retail sales and use tax permit for purposes of reporting and paying all such taxes. Box Photo, under KRS Chapter 139, has paid taxes on its gross receipts from paid subscriptions. It has not reported or paid sales tax on the copies of *The Shopper News* distributed free of charge to the public. Neither has Box Photo paid any sales or use tax on the material content of the paper, namely, newsprint, ink and photo offset plates, all of which come from out of state.

The Revenue Cabinet issued a deficiency assessment in the sum of $4,604.27 against Box Photo on a claim for additional taxes on the material and supplies previously mentioned from out of state. Statutory authority relied upon for the additional tax assessment is KRS 139.310, which says:

An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased on and after April 1, 1968, for storage, use or other consumption in this state at the rate of five per cent (5%) of the sales price of the property.

The Kentucky Administrative Regulations pertaining to sales and use taxes for publications are found in 103 KAR 27:140, and read as follows:

Section 1. Newspapers. (1) Sales of newspapers by the publisher are sales of tangible personal property. The tax applies to the gross receipts of the publisher from such sales in all cases where the publisher received directly from the consumer the full retail sales price of the newspaper, unless the sale is for delivery outside of this State.

(2) The sales of newspapers by the publisher to carriers, newsboys, street vendors, and operators of newsstands and similar places are sales for resale the proceeds of which are not subject to the tax.

(3) Newsstands, drug stores and other places of business with a fixed location are the retailers of newspapers sold by

them. Proceeds from the sale thereof shall be included in the gross receipts of the retailer subject to the tax.

103 KAR 27:140, Section 2, states in part, as follows:

(3) Persons who distribute but do not sell trade publications, journals and the like free of charge to the reader thereof are regarded as consumers of publications which they distribute.

Box Photo complains that to exclude from sales or use taxation a publisher's sale of newspapers delivered by carriers (103 KAR 27:140, Section 1(2)), and yet, on the other hand, to impose a use tax upon purchase of materials used in the publication of a newspaper delivered free of charge (103 KAR 27:140, Section 2(3)) is in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and Sections 2 and 171 of the Constitution of Kentucky.

However, the argued effect of Box Photo's complaint is not a reality. Those businesses which are traditionally called "newspapers" are not required to pay sales taxes on the papers sold to carriers, newsboys, etc. because the reseller theoretically will pay the tax after the paper is sold to the consumer. (The cabinet admits that these taxes are hardly ever collected. The government just doesn't make paperboys pay sales tax.) Otherwise there would be a sales tax on a sales tax, or pyramiding of taxes. Sales tax must be paid on newspapers sold directly by the publisher. Therefore, the regulation does not carve out an exemption as Box Photo argues.

The circuit court gave a sensible answer to the issues as follows:

The only consequence that flows from the publication being given away rather than sold is that the publication which is given away must pay the use tax while the publication which is sold must pay the sales tax.

It may be sleight of hand on the part of the traditional newspapers by having newsboys, carriers and newsstands purportedly to pay the tax; however, the method does qualify as sales for resale in a technical sense under the regulation. By hook or crook the public treasury admittedly does not get the tax upon the resold papers. There is just no doubt, though, that *The Shopper News* fails to qualify its method of distribution on a sale for resale basis. The only discrimination involved, if any, is self-imposed.

Next, Box Photo contends that to deny an exemption to *The Shopper News* is to abridge its constitutional rights. In addition to the federal First Amendment right there is a contention of unconstitutionality grounded upon Section 2 of the Kentucky Constitution which provides that "[a]bsolute and arbitrary power over the lives, liberty and property of free men exists nowhere in a republic," and Section 171 which provides, "[t]axes shall be levied and collected ... and shall be uniform upon all property of the same class...."

Box Photo's argument is stated thus:

In the instant case, the imposition of the taxes at issue has singled out the publisher of freely distributed newspapers. The effect of these taxes is to allow the publishers of newspapers sold at retail to *collect* taxes from their readers on the newsstand price, while forcing the publishers of free newspapers to *pay* use taxes on the cost of raw materials. Clearly, this taxing scheme falls more heavily on the free publishers, who must be forced to consider whether it is economically feasible to remain in business without charging for each publication.

Yet there is no overriding interest on the part of the state enabling it to so burden the publishers of shopper's guides. The Appellee made much below of the fact that the distribution of free publications is not a "sale for resale" under 103 KAR 27:140 Section 1(2) because no money is received from the reader and that the publisher of such publications is therefore a "consumer" under 103 KAR 27:140 Section 2(3).

The circuit court found no violation of the federal or state constitutions. We agree.

The leading and one of the latest constitutional cases in this regard is *Minne-*

*apolis Star v. Minnesota Comm. of Rev.,* 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). There, the state of Minnesota imposed a special use tax on ink and paper which singled out the press and targeted a very small group of newspapers by allowing a $100,000 exemption. For example, of the $893,355 collected statewide under the tax, the Minneapolis Star and Tribune paid $608,634. The Supreme Court held that the special use tax significantly burdened the newspaper's First Amendment rights. The Supreme Court, however, made this comment:

> Clearly, the First Amendment does not prohibit all regulation of the press. It is beyond dispute that the States and the Federal Government can subject newspapers to generally applicable economic regulations without creating constitutional problems.

The taxing scheme and application herein has created no unconstitutional treatment. We affirm the circuit court's judgment.

MILLER, J., concurs.

CLAYTON, J., dissents.

**P.J.H., Appellant,**